IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBRA SCHAEFER,                            )    Civil No.: 6:13-cv-00157-JE
                                           )
                        Plaintiff,         )    FINDINGS AND
                                           )    RECOMMENDATION
        v.                                 )
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social Security,    )
                                           )
                        Defendant.         )
_____)

        Richard F. McGinty
        McGinty & Belcher, PC
        P.O. Box 12806
        Salem, OR 97309

                Attorney for Plaintiff


        S. Amanda Marshall, U.S. Attorney
        Adrian L. Brown, Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

Gerald J. Hill
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Debra Schaefer brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income disability benefits (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff filed an application for SSI on September 29, 2009, alleging that she had been disabled since June 1, 2000.

After her claim had been denied initially on January 12, 2010 and upon reconsideration on June 2, 2010, Plaintiff timely requested an administrative hearing.

On December 13, 2011, a hearing was held before Administrative Law Judge (ALJ) Paul Robeck. At the hearing, Plaintiff amended the date of her alleged onset of disability to January 1, 2009. Plaintiff and Lynn Jones, a Vocational Expert (VE), testified at the hearing.

In a decision filed on February 14, 2012, ALJ Robeck found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on January 3, 2013, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

FINDINGS AND RECOMMENDATION - 2

**Background**

Plaintiff was born on February 16, 1960, and was 49 years old when she applied for SSI

benefits and 51 years old at the time of the hearing.  She was a "younger individual" as defined

in the Act at the time of her alleged onset of disability in 2009, and was a "person closely

approaching advanced age" when the ALJ issued the decision denying her claim.

Plaintiff did not complete high school.[1]  She has past relevant work experience as a

cashier and a hair stylist, and has not worked or sought employment since 1999.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

---

[1]Plaintiff's memorandum states that Plaintiff completed the 12th grade.  However, at the hearing
Plaintiff testified that she had not completed the 11th grade or earned a high school diploma or a GED.
The medical record indicates that Plaintiff told two doctors who conducted separate psychological
examinations that she completed the 11th grade and dropped out of school during the 12th grade.

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at

1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy. <u>Id.</u>

### **Medical Record and Testimony**

Like the parties, I will not separately summarize Plaintiff's medical records or the

witnesses's testimony here, but will instead address relevant portions of that evidence in the

discussion below.

### **ALJ's Decision**

At the first step of the disability analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since filing her application for SSI benefits.

At the second step, the ALJ found that Plaintiff had the following "severe" impairments:

Hepatitis-C, spondylosis of the lumbar spine, cognitive disorder, depressive disorder, and

methamphetamine abuse reported to be in remission.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or equaled a presumptively disabling impairment set out in the listings,

20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that

Plaintiff retained the capacity to perform less than the full range of light work requiring no close

contact with the general public, no more than occasional contact with co-workers, and involving

only simple, repetitive tasks. In reaching this conclusion, the ALJ found that the record did not

support most of Plaintiff's allegations, and that Plaintiff's statements concerning her symptoms

were not credible to the extent they were inconsistent with the RFC assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a cashier or a hair stylist.

At the fifth step of his disability analysis, the ALJ found that Plaintiff could perform other jobs that existed in substantial numbers in the national economy. Based on the testimony of the VE, the ALJ cited hand packager, bagger, and stuffer jobs as examples of such work. Because he concluded that Plaintiff could perform this work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

FINDINGS AND RECOMMENDATION - 6

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in finding that she was not wholly credible; in

finding that statements from Goldie Way, a third-party witness, were not wholly credible; and in

rejecting the opinions of Dr. Kay Stradinger and Dr. John Cochran, who conducted

psychological examinations.

### 1. **Plaintiff's Credibility**

### **Evaluating A Claimant's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If

a claimant produces medical evidence of an underlying impairment that is reasonably expected

to produce some degree of the symptoms alleged, and there is no affirmative evidence of

malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility

determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464

F.3d 968, 972 (9th Cir. 2006).  An ALJ must also specifically identify evidence that undermines a

claimant's testimony.  See Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ

making adverse credibility finding must identify testimony undermining credibility).

In evaluating a claimant's credibility, an ALJ must examine the entire record and

consider several factors, including the claimant's daily activities, medications taken and their

effectiveness, treatment other than medication, measures other than treatment used to relieve

pain or other symptoms, and "any other factors concerning the individual's functional limitations

and restrictions due to pain or other symptoms."  SSR 96-7.   An ALJ may also consider such

factors as a claimant's inconsistent statements concerning symptoms and other statements that

appear less than candid, unexplained or inadequately explained failure to seek treatment or

follow a prescribed course of treatment, medical evidence tending to discount the severity of the

claimant's subjective claims, and vague testimony as to the alleged disability and symptoms.

Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld,

even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of

Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**Analysis**

Plaintiff contends that the ALJ did not provide legally sufficient reasons supporting his

conclusion that she was not wholly credible.

Given his citation to "issues of malingering due to secondary gain motivations as well as

narcotic drug seeking behavior," the ALJ arguably did not need to provide clear and convincing

reasons for discounting Plaintiff's credibility.  However, because the record did not

unequivocally establish malingering, I assume that the ALJ was required to provide clear and

convincing reasons supporting his conclusion that Plaintiff was not wholly credible.

Careful review of the ALJ's decision and the record supports the ALJ's credibility

determination.  The ALJ based his credibility assessment largely on significant inconsistencies

between Plaintiff's statements and allegations and other evidence in the record, including

evidence in the medical record and evidence concerning Plaintiff's activities.  The ALJ noted the

lack of objective clinical evidence for many of the medical conditions Plaintiff alleged, and the

existence of only "minimal clinical findings" despite Plaintiff's repeated applications for

disability benefits.  As examples, the ALJ noted that objective medical testing did not confirm

the existence of the ruptured or herniated discs that Plaintiff repeatedly alleged had been found. The ALJ cited MRIs showing only minor disc bulges, which had not changed between 2003 and 2008. He correctly noted that examinations in March 2009 and June 2011 likewise showed no changes and that a bone scan taken in May 2011 showed no abnormalities. The ALJ also noted that imaging of Plaintiff's right knee taken in 2011 in response to Plaintiff's request for narcotic pain medication showed findings "normal for age with maintained joint spaces." These observations provided clear and convincing support for the ALJ's credibility determination. See, e.g., Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9ᵗʰ Cir. 2008) (inconsistency of a claimant's testimony with medical records legitimate basis for discounting a claimant's credibility).

The ALJ stated that Dr. Stradinger, an examining doctor, had opined that Plaintiff "exaggerated her alleged symptoms because she is focused on getting SSI disability." The ALJ asserted that this opinion was supported by "documentary evidence in the record," and supported a conclusion that Plaintiff was not wholly credible. Dr. Stradinger did not, in fact, explicitly find that Plaintiff exaggerated her symptoms, but instead opined that it was possible that she did so "in this process of applying for disability." Nevertheless, given Dr. Stradinger's repeated references to the high priority Plaintiff placed on obtaining SSI, and observation that Plaintiff considered this her most important priority, the ALJ could reasonably conclude that Dr. Stradinger thought Plaintiff exaggerated her symptoms in order to increase the likelihood that her claim would be successful, and could support his own conclusion as to Plaintiff's credibility with that conclusion. The ALJ also correctly noted that Dr. Stradinger reported that Plaintiff had not mentioned her methamphetamine IV drug use when asked about illicit drug use. The ALJ reasonably considered this omission as additional evidence that Plaintiff's description of her

symptoms and impairments reflected "secondary gain motivation," and reasonably concluded that it undermined Plaintiff's credibility. He also noted that Plaintiff had told Dr. Stradinger that she was "engaged in rehabilitation" from a motor vehicle accident, which in fact was a minor incident in which the vehicle she was riding in had struck a tire on the road. The ALJ correctly asserted that medical records indicated that Plaintiff was "just seeing a naturopath" at the time and there was no evidence that she was involved in physical therapy or taking any medications related to that incident.

The ALJ noted that, though Dr. Stradinger reported that Plaintiff's depression and anxiety appeared to have improved with "medication management," the medical record in fact included no evidence that such medication had ever been prescribed.

The ALJ cited substantial evidence in the record supporting the conclusion that Plaintiff overstated the severity of her symptoms and impairments and was less than fully credible in her clinical interview with Dr. Stradinger in order to strengthen her disability claim, and that evidence provided clear and convincing support for his credibility determination. E.g., Thomas v. Barnhart, 278 F.3d 947, 858-59 (9th Cir. 2002) (evidence that claimant exaggerated symptoms relevant to credibility determination); Tommasetti, 533 F.3d at 1040 (claimant's lack of candor relevant factor in evaluating credibility).

In support of his credibility finding, the ALJ also cited Plaintiff's activities that were inconsistent with the degree of pain and impairment that Plaintiff alleged. He noted that Plaintiff's testimony that she needed to use a cane, could walk only very short distances, could sit for only one hour, and was severely limited by ruptured discs and bone spurs was inconsistent with medical evidence, including the "minimal clinical findings." He noted that, though she alleged that her "myriad of mood/anxiety and pain symptoms" were debilitating since September

2009, records indicated that in November 2009,  Plaintiff was able to travel to and from Hawaii where she reportedly was able to swim back to shore after being smashed into some rocks by a strong wave.  The ALJ also asserted that evidence that Plaintiff helped care for her young granddaughter almost every day, walked her dog, could drive evenings in inclement weather, was able to cook independently, could go shopping alone, went out to see a girlfriend two or three time a week, and could perform household chores supported the conclusion that Plaintiff exaggerated her symptoms.  This conclusion is supported by the record, and provided clear and convincing support for the ALJ's credibility determination.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (activities inconsistent with alleged symptoms relevant to credibility determination); Turner v. Commissioner, 613 F.3d 1217, 1225 (9th Cir. 2010) (even activities performed with some difficulty can undermine claimant's allegations of totally disabling impairment).

The ALJ here provided clear and convincing reasons supporting his conclusion that Plaintiff was not wholly credible, and identified specific and substantial evidence supporting that conclusion.  His credibility determination was based upon a reasonable interpretation of the evidence and inferences that could be drawn from the evidence, and should not be set aside here. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (credibility determinations based upon ALJ's reasonable conclusions upheld).

2. **Credibility of Lay Witness**

Goldie Way, Plaintiff's mother, submitted a Third Party Adult Function Report describing her observations of Plaintiff's activities and functioning.

The ALJ noted that, in her lay witness report, Ms. Way stated that, on a typical day, Plaintiff "eats and walks a little and back to bed."  He stated that Ms. Way further reported that Plaintiff "had no difficulties in performing personal grooming and hygiene; she prepares her own meals; she drives and can go out alone and goes shopping in stores, including for medicine and a few clothes; goes out 2 to 3 times a week to see her girlfriend."  The ALJ noted that Ms. Way initially indicated that Plaintiff could count change, handle a savings account and use a checkbook, but then changed her answer to "no" as to the saving account and checkbook, and provided no explanation in a space provided to explain any "no" answers.  He noted that Ms. Way "proceeded to check off 15 out of 19 abilities allegedly affected by the claimant's myriad of alleged impairments, adding that claimant has a 'short' attention span."  The ALJ stated that "the claimant's mother reported that the claimant has 'fair' and 'okay' abilities to follow spoken and written instructions, as well as get along with authority figures."  He added that Ms. Way had left a "narrative section" allowing space for additional comments "entirely blank."

The ALJ concluded that Plaintiff's mother's third party report was "not entirely credible by omission and contradiction" and gave it "little weight."  He noted that the report omitted any reference to Plaintiff's "criminal history and incarceration in prison for intravenous methamphetamine possession and use," and added that, though the witness alleged "significant limitations" in Plaintiff's ability to walk or stay on her feet without fear of falling, she did not mention that Plaintiff took her dog for walks.  The ALJ noted that at times close to the date of Ms. Way's report, Plaintiff was observed to exhibit "normal gait and station" during a visit to an emergency room and during Dr. Stradinger's examination, and that Plaintiff herself had reported "independent and significant activities of daily living" during Dr. Stradinger's examination.

FINDINGS AND RECOMMENDATION - 12

Plaintiff contends that these were not sufficient bases upon which to discount Ms. Way's credibility and report.

I disagree.  An ALJ must provide reasons that are "germane" for rejecting lay witness testimony.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  I disagree with the ALJ's conclusion that Ms. Way should have referred to Plaintiff's drug use and criminal conviction, because I find no questions on the third party report form that necessarily should have elicited that information.  However, the ALJ's observation that Ms. Way's report omitted information concerning Plaintiff's dog walking is accurate, and questions on the form specifically asked about the claimant's pet care activities.  The ALJ's citation to differences between the inability to stand and walk without fear of falling that Ms. Way reported and the objective observations of doctors accurately reflects the record and was a "germane" reason for doubting the accuracy of other of Ms. Way's observations.

### 3. **ALJ's Evaluation of Opinions of Examining Drs. Stradinger and Cochran**

The opinion of an examining physician is entitled to greater weight than the opinions of a non-examining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons which are supported by substantial evidence in the record for rejecting opinions of an examining physician that are contradicted by another physician.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

a. **Dr. Stradinger**

FINDINGS AND RECOMMENDATION - 13

At the request of the Agency, Kay Stradinger, Psy. D., conducted an independent psychological assessment of Plaintiff on December 12, 2009.  Dr. Stradinger reviewed Plaintiff's records, interviewed Plaintiff, summarized Plaintiff's medical and psychiatric history, evaluated Plaintiff's level of functioning, conducted a mental status examination, and set out her diagnoses, which included assignment of a Global Assessment of Functioning (GAF) score of 55.  In his decision denying Plaintiff's claim, the ALJ reviewed Dr. Stradinger's report at length.  The ALJ noted that, though she reported that she was taking Celexa and Doxepin for depression and anxiety, no treating records showed prescription of these medications.  He noted that Plaintiff had told Dr. Stradinger that she experienced significant depression and was "stressed about this Social Security Decision," gave "vague examples of forgetfulness," voiced fears of dementia, rated her attention span at a "minus 10," and reported that she had suffered bruising, pain and emotional trauma as a result of a motor vehicle accident she was involved in a few months earlier.  The ALJ noted that "the actual motor vehicle accident was hitting a tire on the road and there is no evidence of medications or physical therapy, just seeing a naturopath."

The ALJ stated that Dr. Stradinger reported that Plaintiff's mental status examination performance was "noted as questionable with evidence of poor effort," that Plaintiff's "concentration and persistence were otherwise noted as adequate," and that Plaintiff repeatedly referred to her stress concerning eligibility for SSI.  He noted that Plaintiff had "admitted teenage use of marijuana," and that Dr. Stradinger remarked on her omission of any reference to the past IV drug use mentioned in some of her records.  The ALJ also observed that, though Dr. Stradinger opined that Plaintiff's past depression and anxiety had improved  with medication management, the record included "no record of prior mental health medication management for the claimant."  He also noted that Dr. Stradinger had reported that Plaintiff's performance was

"poor across all areas of the formal assessment tasks other than judgment, suggesting that she might be either extra stressed or exaggerating her symptoms in the process of applying for disability."

The ALJ noted that Dr. Stradinger diagnosed Plaintiff with "an anxiety disorder, not otherwise specified (NOS); depressive disorder, NOS; *rule-out* major depressive disorder, recurrent with psychotic symptoms; and cognitive disorder NOS with rule-out dementia."  He added that, although she had deferred a personality disorder diagnosis, "Dr. Stradinger nonetheless did assess histrionic traits and a global assessment of functioning (GAF) score at 55, indicative of significantly severe difficulties in social, work or classroom settings . . . ."

The ALJ found that, given Plaintiff's "exaggeration of symptoms, omission of methamphetamine IV drug use and prison incarcerations, questionable performance in testing and her focus on obtaining Social Security Disability," the "interim" GAF score of 55 was "not supported by actual mental health impairments, but rather is supported by secondary gain motivation."

Plaintiff correctly notes that, other than concluding that the GAF score Dr. Stradinger assessed reflected "secondary gain," the ALJ made no specific findings as to the validity or significance of Dr. Stradinger's report.  She contends that the court cannot "speculate" as to the weight that the ALJ accorded Dr. Stradinger's other findings, including her opinion that Plaintiff would have

> a difficult time initially in a new job for concentrating and learning new tasks and remembering more than one or two steps . . . [was] likely to have some difficulty interacting with supervisors, coworkers and the public . . . likely would have a difficult time handling the usual stresses in the workplace . . . .

Plaintiff contends that the ALJ erred in failing to incorporate a restriction in ability to interact with supervisors in his assessment of her residual functional capacity, in failing to address the effects of depression and anxiety on her ability to interact with supervisors, in concluding that she could perform Specific Vocational Preparation (SVP) level 2 occupations cited by the VE as consistent with the ALJ vocational hypothetical, and in failing to include any functional limitations based upon Dr. Stradinger's assertion that she would have difficulty responding to "usual" workplace stresses.  Plaintiff also contends that the ALJ erred in assuming that Dr. Stradinger had necessarily concluded that she exaggerated her symptoms because of her focus on obtaining SSI benefits, and that the ALJ's reference to 5 previous applications for SSI that are not "found anywhere in the record" shows that he prejudged her case.  She contends that the ALJ further erred by "intuit[ing] a diagnosis" of malingering that Dr. Stradinger "declined to make."  Plaintiff contends that, in the absence of a diagnosis of malingering, the ALJ's assertion that she was a malingerer was "misplaced and not supported by substantial evidence."  Finally, she asserts that the ALJ's RFC assessment was invalid because it failed to account for all of her limitations.

A careful review of Dr. Stradinger's report and the ALJ's decision does not support these contentions.  Though Dr. Stradinger did not explicitly conclude that Plaintiff exaggerated her impairments in order to strengthen her disability claim or was a malingerer, from her reference to Plaintiff's failure to mention her IV drug use when asked about illicit drug use and repeated references to Plaintiff's focus on obtaining disability benefits and its potential effect on her effort and description of her symptoms and limitations, the ALJ could  reasonably infer from Dr. Stradinger's report that Plaintiff exaggerated the severity of her limitations.  Moreover, speculation is not required in order to determine that the ALJ accepted most of Dr. Stradinger's

opinions as to Plaintiff's functional capacity, because he included limitations in Plaintiff's RFC that reflected the impairments the Dr. Stradinger had reported.  The RFC limited Plaintiff to work requiring no close contact with the general public, only occasional interaction with co-workers, and no more than simple, repetitive tasks.  Whether the limitations included in an  RFC adequately reflect a claimant's functional limitations turns on their consistency with the restrictions identified in the medical record.  E.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  The limitations on interaction and work complexity the ALJ imposed here were consistent with both the impairments identified in Dr. Stradinger's report and with other substantial evidence in the medical record.  The ALJ could reasonably conclude that these limitations adequately accounted for Plaintiff's potential difficulties in learning new jobs, interacting with supervisors, performing multi-step tasks, and coping with usual workplace stresses identified in Dr. Stradinger's report.

In the absence of any contradictory opinions as to Plaintiff's GAF near the time of Dr. Stradinger's report, the ALJ was required to provide clear and convincing reasons for concluding that the GAF score of 55 assessed by Dr. Stradinger overstated the severity of Plaintiff's mental impairments.  The ALJ satisfied that burden by citing Plaintiff's reported "exaggeration of symptoms, omission of methamphetamine IV drug use and prison incarcerations, questionable performance in testing and her focus on obtaining Social Security Disability . . . ." in support of his conclusion that the GAF score reflected "secondary gain motivation" rather than "actual mental health impairments."  A careful reading of Dr. Stradinger's report supports the ALJ's conclusion that the GAF score did not accurately reflect Plaintiff's mental condition.  The ALJ's other citations to the absence of records of mental health treatment provided further support for this conclusion.

FINDINGS AND RECOMMENDATION - 17

Plaintiff has not shown that the ALJ's reference to earlier applications for disability benefits showed that the ALJ had unfairly prejudged her present claim.[2]  As the Commissioner correctly notes, earlier findings that a claimant was not disabled give rise to a presumption of continuing non-disability.  E.g., Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).  The ALJ generally cited earlier applications in noting the absence of evidence of mental health treatment, and in discussing a preoccupation with obtaining benefits which was amply documented in Dr. Stradinger's report.  A claimant may overcome that presumption by showing "changed circumstances," Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).  Plaintiff has not shown that the ALJ's reference to earlier applications demonstrated any prejudice or prejudiced Plaintiff's ability to show that the circumstances had changed and that she is now disabled.

In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations, and a VE's conclusion that a claimant can work does not have evidentiary value if the assumptions in the hypothetical are not supported by the record.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).   Based upon a careful review of the record, I am satisfied that the ALJ's vocational hypothetical sufficiently reflected the limitations in complexity of tasks Plaintiff could reasonably be expected to perform, Plaintiff's limitations in social functioning,  and the difficulty Plaintiff would likely experience in coping with usual workplace stresses.  The Commissioner correctly notes that the hand packager, bagger, and stuffer jobs that the VE identified in response to the ALJ's vocational hypothetical are unskilled positions that  "involve the least complicated . . . functions on the 0-8

---

[2]Plaintiff contends that the ALJ erred in referring to earlier applications for disability benefits because the record does not include evidence of the 5 previous applications to which the ALJ referred. Though I have not found a reference to the specific number of times that Plaintiff has filed applications, at the hearing before the ALJ, Plaintiff said she had a "number of prior applications."

FINDINGS AND RECOMMENDATION - 18

descending scale in the . . . Dictionary of Occupational Titles (4th ed. 1991) <u>available at</u> 1991 WL

645965 . . . ."  Defendant's Responding Memorandum at 10.

b. **Dr. Cochran**

At the request of Plaintiff's counsel, Dr. John Cochran conducted a 6 hour cognitive and

psychological examination on January 10, 2012.  Dr. Cochran conducted a lengthy interview and

administered a number of tests.  He diagnosed Alcohol Dependence (in remission by self report);

Undifferentiated Somatoform Disorder; Anxiety Disorder (NOS); Dysthymic Disorder (i.e. early

onset); and Personality Disorder NOS with avoidant, dependent, and hypochondriacal features.

Dr. Cochran assessed Plaintiff's GAF score at 50, and opined that Plaintiff appeared to be

experiencing depression and anxiety "making her ability to function at an adequate level

challenging."  He reported that Plaintiff's responses to the Test of Memory Malingering

(TOMM) "did not indicate that she was malingering."  Dr. Cochran also indicated that Plaintiff's

MMPI-2 was "marginally valid" and that Plaintiff's responses to the MCMI-II "displayed a

moderate tendency toward . . . a consequence exaggeration of current problems."

Dr. Cochran rated the impairment in Plaintiff's ability to remember locations and work-

like procedures as moderate; impairment in ability to remember and understand detailed

instructions as moderately severe; impairment in ability to carry out detailed instructions and to

maintain attention and concentration for extended periods of time as moderately severe;

impairment in ability to perform activities within a schedule and/or maintain regular attendance

and/or be punctual within customary tolerances as moderate; impairment in ability to sustain

ordinary routine without special supervision and ability to work in coordination with or

proximity to others without being distracted by them as moderately severe; impairment in ability

to complete an ordinary work day without interruptions for psychologically based symptoms as

moderate; impairment in ability to complete a normal work week without such interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods as moderately severe; impairment in ability to interact with the general public, to accept instructions and respond appropriately to supervisors, and to get along with coworkers and peers without distracting them or exhibiting behavioral extremes as moderately severe; impairment in ability to maintain socially appropriate behavior and/or adhere to basic standards of neatness and cleanliness as moderate; impairment in ability to respond appropriately to changes in work setting and set realistic goals or make plans independent of others as moderately severe; and impairment in ability to be aware of normal hazards and take appropriate precautions and to take travel in unfamiliar places or use public transportation as moderate.

The ALJ concluded that Dr. Cochran's report overstated the severity of Plaintiff's impairments.  The ALJ asserted that the form that Dr. Cochran used was not sufficiently specific in several respects, that most of the functional limitations that Dr. Cochran assessed were accounted for in the ALJ's RFC assessment, that Dr. Cochran was unaware of Dr. Stradinger's observations concerning possible exaggeration of symptoms, and that the "moderately severe" limitation Cochran reported in Plaintiff's capacity to "sustain ordinary routine without special supervision" was not supported by evidence in the medical record.  However, the most significant reasons that the ALJ provided for rejecting Dr. Cochran's assessment were his conclusions that Dr. Cochran's opinions were largely "founded on the claimant's anecdotal reports" and were inconsistent with Plaintiff's activities documented in the record.

The ALJ noted that, though Dr. Cochran repeated Plaintiff's allegations that she had osteoarthritis in her back, had herniated discs, and needed surgery on her right knee, no examining or treating physician had assessed the back problems alleged or opined that Plaintiff

needed knee surgery, and that "[a]ll clinical findings of the right knee were mild and non-limiting."

This is a clear and convincing reason for rejecting Dr. Cochran's opinions as to the severity of Plaintiff's impairments, and it is supported by substantial evidence in the medical record.  A careful review of Dr. Cochran's report fully supports the ALJ's assertion that Dr. Cochran relied in large measure on Plaintiff's subjective allegations concerning her symptoms, and was apparently unaware of medical records that contradicted those allegations.  This is significant because, where, as here, a claimant's credibility has been properly discounted, an ALJ may also discount medical opinion that is based upon a claimant's subjective complaints. See  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 1999); Morgan v. Commissioner, 169 F.3d 595, 602 (9th Cir. 1999) (doctor's opinion premised on claimant's accounts of symptoms and limitations may be disregarded if claimant's complaints properly discounted); Bray v. Commissioner, 554 F.3d 1219, 1228 (9th Cir. 1999).  As noted above, the medical records are inconsistent with Plaintiff's allegations, and the ALJ provided legally sufficient support for his finding that Plaintiff was not wholly credible.

The record also supports the ALJ's conclusion that Plaintiff's activities, including her level of social functioning, were inconsistent with the degree of impairment to which Dr. Cochran opined, and with the GAF score of 50 that he assigned.  The ALJ reasonably concluded that this score was entitled to little weight because it was inconsistent with Plaintiff's activities of daily living and social functioning, which were "far greater than she alleges."  The ALJ noted that Plaintiff was able to care for her grandchild, travel to Hawaii and swim in the ocean, drive, take public transportation, do housework and independently prepare meals and care for her personal hygiene, and perform other activities of daily living that indicated a higher level of

function than Dr. Cochran found.  These activities supported the ALJ's rejection of Dr.

Cochran's opinion.  E.g., Morgan v. Commissioner, 169 F.3d 595, 602-03 (9th Cir. 1999) (ALJ

may reject doctor's opinion inconsistent with claimant's activities).

Dr. Cochran's reliance on Plaintiff's subjective allegations and assessment of limitations

that the ALJ reasonably concluded were inconsistent with Plaintiff's activities was a sufficient

basis for rejecting Dr. Cochran's opinion as to the severity of Plaintiff's limitations.

I note that, in addition to these observations, the ALJ stated that Dr. Cochran "does not

reference having any prior medical records of the claimant for review prior to meeting with her."

It is not clear that this is correct, given that Dr. Cochran indicated that Plaintiff's "Social

Security exhibit file was available for review."  However, Dr. Cochran did not indicate that he

had in fact reviewed other medical records in that file at any time, and his recitation of Plaintiff's

allegations that are not consistent with the medical record supports the ALJ's conclusion that he

did not review other medical records.  In addition, the ALJ correctly noted Dr. Cochran did not

acknowledge that, though Plaintiff alleged "numerous mental health symptom[s]," the medical

records include no evidence of mental health counseling or the prescription of medications for

Plaintiff's mental health.  Though these issues are less significant than those discussed above,

they provided additional support for the ALJ's rejection of Dr. Cochran's opinion.

## Conclusion

A judgment should be entered AFFIRMING the Commissioner's decision and

DISMISSING this action with prejudice.

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due January 27, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 8th day of January, 2014.


_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 23